OPINION
¶ {1} Plaintiff-appellant KeyBank appeals the decision of the Columbiana County Common Pleas Court granting summary judgment to defendants-appellees Guarnieri Secrest, P.L.L., Randil J. Rudloff Co. L.P.A. and Randil J. Rudloff (collectively referred to as the GS appellees) on KeyBank's conversion and breach of trust claims. The first issue is whether conversion requires the party converting the property to derive a benefit from the conversion. The second issue is whether the trial court erred when it dismissed KeyBank's breach of trust claim against GS for failure to state a claim upon which relief could be granted. For the reasons stated below, the judgment of the trial court is reversed and this case is remanded.
 STATEMENT OF FACTS ¶ {2} The underlying litigation giving rise to this appeal involved Stephen and Rebecca Labate and Labate Chrysler, Jeep, Dodge, Inc. (collectively referred to as Labate) suing Anthony Pesce; Dennis Denoi; Janice Courtney; Phillip Courtney; Tony Pesce Chrysler-Dodge Jeep, Inc.; Punxsutawney Land Company, LTD (collectively referred to as Pesce); Guarnieri Secrest, P.L.L. and James McDonnell. At the heart of the action was the sale of Pesce's car dealership, real property, and inventory to Labate. The sale, for the most part fell apart, and resulted in litigation. Labate claimed that Pesce breached the contract, committed fraud, and made misrepresentations.
¶ {3} Randil J. Rudloff from Guarnieri Secrest was the escrow agent in the contract for sale. In all, Labate deposited $272,651.11 into the escrow account. At the time of litigation, $115,872.95 was left in the account.
¶ {4} During the underlying litigation, Labate sought to have the escrowed funds turned over to it. Guarnieri Secrest filed a Motion for Interpleader of Money and sought to have the remaining amount deposited with the Columbiana County Clerk of Court. In the motion, Guarnieri Secrest explained that both Labate and Pesce have creditors — Labate's creditor was Fifth Third Bank and Pesce's creditor was KeyBank. Thus, it reasoned that depending on how the court ruled on the causes of action, the money would most likely end up with one of the creditors. The trial court granted the motion and released Guarnieri Secrest from further liability. *Page 3 
 ¶ {5} As a result of the above, Fifth Third Bank moved to intervene and enforce judgment. It sought the $115,872.95 that Guarnieri Secrest had deposited with the court. It explained that it was Labate's lender; it lent Labate the money to purchase the dealership and inventory. Labate, however, defaulted on the loan and Fifth Third had obtained a valid cognovit judgment against Labate. The court granted the motion and ordered the funds disbursed to Fifth Third Bank.
¶ {6} Months after that occurred, KeyBank moved to intervene in the suit and filed a third party complaint. KeyBank holds security agreements on various aspects of Pesce's dealership and inventory. The third party complaint alleged causes of action sounding in conversion and breach of trust against Guarnieri Secrest, P.L.L., Randil J. Rudloff Co, L.P.A. and Randil J. Rudloff and later a claim against Fifth Third. KeyBank alleged that it had the first perfected security interest and the GS appellees were not entitled to disburse funds from the escrow account without its approval.
¶ {7} In response to the complaint, the GS appellees filed a Civ. R. 12(B)(6) motion moving to dismiss Count II (breach of trust claim) of KeyBank's third party complaint. The motion was granted. 08/30/06 J.E. The GS appellees then filed an answer to the conversion claim and additionally moved for summary judgment on that claim. 09/07/06 Answer and Summary Judgment Motion. Prior to the trial court ruling on that summary judgment motion, KeyBank amended its third party complaint (03/07/07 Amended Complaint). In the amended complaint, KeyBank reasserted the breach of trust claim against the GS appellees that had been previously dismissed, and maintained its conversion claim against the GS appellees. On April 23, 2007, the trial court ruled on the GS appellees motion for summary judgment on the conversion claim by granting summary judgment to the GS appellees. In that ruling, the trial court also dismissed the reasserted breach of trust claim that was exactly the same as the previously dismissed claim; thus, it was once again dismissed for failure to state a claim upon which relief could be granted.
¶ {8} All remaining claims by the multiple parties in this case were eventually resolved with the final issue being disposed of in the trial court's December 7, 2007 judgment entry, thereby rendering all earlier orders final and appealable. KeyBank now timely appeals from the trial court's decision granting summary judgment in favor *Page 4 
of the GS appellees on the conversion claim and dismissing its breach of trust claim against the GS appellees for failure to state a claim. It raises three assignments of error. However, it addresses those assignments out of order; the third assignment of error is addressed first. Thus, we will begin with that assignment of error.
 THIRD ASSIGNMENT OF ERROR ¶ {9} "THE TRIAL COURT ERRED BY GRANTING APPELLEES MOTION FOR SUMMARY JUDGMENT ON COUNT I OF KEYBANK'S AMENDED THIRD-PARTY COMPLAINT (CONVERSION) BECAUSE APPELLEES FAILED TO DEMONSTRATE THE ABSENCE OF A GENUINE ISSUE OF MATERIAL FACT AND THAT APPELLEES ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW."
¶ {10} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Bonacorsi v. Wheeling Lake Erie Ry.Co., 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 24. Summary judgment is properly granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66; Civ. R. 56(C).
¶ {11} The trial court granted summary judgment to the GS appellees on the conversion claim. It reasoned:
¶ {12} "Filings in this case make it clear that the Third-Party Defendants, prior to paying into Court the sum of $115,872.95 made certain distributions to third parties. There is no indication that any of those distributions benefited the Third-Party Defendants so as to make them liable in conversion." 04/23/07 J.E.
¶ {13} KeyBank argues that the trial court incorrectly determined that benefit was an element of conversion. According to KeyBank, since it is not, summary judgment should not have been granted.
¶ {14} It has been explained that:
¶ {15} "Conversion is an exercise of dominion or control wrongfully exerted over property in denial of or under a claim inconsistent with the rights of another. Joyce v. Gen. Motors Corp. (1990),49 Ohio St.3d 93, 96; Union Sav. Bank v. White Family *Page 5 Cos., Inc., 167 Ohio App.3d 51, 2006-Ohio-2629, ¶ 26. Typically, `[t]he elements of a conversion cause of action are (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages.' Haul Transport of VA,Inc. v. Morgan (June 2, 1995), Montgomery App. No. 14859; see Knoop v.Knoop, Montgomery App. No. 22037, 2007-Ohio-5178, ¶ 20. Where conversion is premised on the unlawful retention of property, the plaintiff must establish that `(1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner.' Barnes v. First Am. Title Ins. Co. (Aug. 8, 2006), N.D.Ohio No. 1:06CV574, citing Tabar v. Charlie's Towing Serv.,Inc. (1994), 97 Ohio App.3d 423, 427-28. Where an action for conversion is based on the conversion of cash, the action will `only lie if "identification is possible and there is an obligation to deliver the specific money in question."` Haul, supra." Dice v. White FamilyCos., 173 Ohio App.3d 472, 2007-Ohio-5755, ¶ 17.
¶ {16} As can be seen from the above discussion concerning the elements of conversion, benefit is not an element. The First Appellate District has held that the fact that a converter derived no benefit from the transaction is no defense to a claim of conversion. Taylor v. FirstNatl. Bank of Cincinnati (1986), 31 Ohio App.3d 49, 53. Moreover, this court has favorably cited that decision. Estate of Alkhaldi v.Khatib, 7th Dist. No. 04MA285, 2005-Ohio-6168, ¶ 28. In that case we stated whether a converter "benefited from his actions is irrelevant" and cited Taylor. Id. Consequently, the trial court inappropriately relied on that factor as a basis for granting summary judgment.
¶ {17} The GS appellees argue that regardless of whether or not the trial court's reliance on benefit was correct, the grant of summary judgment was still correct. It contends that one element of actionable conversion is that the claimant either owned or had the right to possess the thing converted at the time of the conversion. According to the GS appellees, KeyBank never owned the money. It argues that while KeyBank had a perfected security interest in any "identifiable cash proceeds" from Pesce's disposition of its collateral, there was never any disposition of the collateral because the purchase transaction of the real estate never occurred. *Page 6 
"Stated another way, Pesce and, derivatively, KeyBank, were never entitled to proceeds of sale, and never owned or had the right to possess such proceeds for Rudloff [GS] to have converted." Brief p. 4.
¶ {18} KeyBank maintains, in its reply brief, that there is a genuine issue of material fact as to whether a sale occurred in this case. KeyBank is correct that this is a factual issue. Even though the real estate was never sold, in the trial court's final judgment entry disposing of the remainder of claims between Labate and McDonell, it stated:
¶ {19} "Although the transaction started out to be the sale of the dealership and ended up being a sale of assets, his efforts to put the Labates into the car business as in accordance with their goal."
¶ {20} Furthermore, the trial court adopted McDonell's closing and reply briefs as part of its judgment. In the closing brief McDonnell stated:
¶ {21} "It is clear the Labate's agreement to purchase the selected assets of the dealership closed. (Ex. 7). The bill of sale (Ex. G), the Labate's letter to Mr. Cammett at Daimler Chrysler, 8/21/04 (Ex. F) and the closing statement prepared by plaintiffs' accountant, Mr. George (Ex. 35) as signed by all the parties confirm this closing."
¶ {22} Consequently, the trial court found that a sale did occur. KeyBank claims to have a security interest in the assets that were sold; it claims that those assets were the collateral for the security agreements it had with Pesce. (Daniel Mismas Affidavit (Vice President of KeyBank) ¶ 9-10). Thus, since there was a sale that could possibly have entitled KeyBank to the proceeds thereof, summary judgment should not have been granted. Therefore, arguably, KeyBank had a right to the proceeds. Accordingly, the first prong of conversion raises a genuine issue of material fact and thus, can withstand a summary judgment motion.
¶ {23} The second prong of conversion requires disposition of the property. Rudloff, the attorney working for the GS appellees, testified at his deposition about how the funds were disbursed. (Rudloff Depo. 115-146). He indicated that while KeyBank approved some of the payments, not all were approved. (Rudloff Depo. 115-146). For instance, he informed KeyBank that the payment to the GS appellees would be $10,000, however, it ended up being $12,500. (Rudloff Depo. 141-143). *Page 7 
Also for McDonell's fee, KeyBank was told that it would be $20,000, however, the fee ended up being only $10,000. (Rudloff Depo. 137-141). Thus, this prong is satisfied for purposes of surviving a summary judgment motion.
¶ {24} The third prong is that the proceeds were identifiable. The tracking method used by the GS appellees showed that they were. The money was held and tracked in an IOLTA account. Consequently, this prong also survives summary judgment. As all the prongs of conversion were capable of surviving the summary judgment motion, the GS appellees alternative argument fails. Thus, this assignment of error has merit.
 FIRST ASSIGNMENT OF ERROR ¶ {25} "THE TRIAL COURT ERRED BY GRANTING APPELLEES' MOTION TO DISMISS COUNT II OF KEYBANK'S THIRD-PARTY COMPLAINT (BREACH OF TRUST) AS KEYBANK ADEQUATELY ALLEGED FACTS ENTITLING IT TO RELIEF."
¶ {26} KeyBank, in its third party complaint, asserted in Count II a cause of action for breach of trust. The GS appellees filed a Civ. R. 12(B)(6) motion to dismiss the breach of trust claim, which the trial court granted. The trial court cited it reasons for doing so as those provided in the memorandum supporting the motion. Those reasons were that an attorney who holds escrow funds is the "agent-trustee of the funds for the buyer and seller." Eaton v. Craig (1982),4 Ohio App.3d 22, 23. KeyBank was neither the GS appellees' client nor a party to the purchase. Thus, according to the GS appellees and the trial court, it owed no duty to KeyBank.
¶ {27} Thereafter, KeyBank moved to amend its complaint. The trial court granted the motion and in the amended complaint KeyBank reasserted its breach of trust claim. The breach of trust claim was identical to the claim made in the original third party complaint.
¶ {28} When the trial court ruled on the GS appellees' motion for summary judgment on the conversion claim, it also addressed the re-raised breach of trust claim. It stated:
¶ {29} "The New Party Defendants, Guarnieri Secrest, PLL, Randil J. Rudloff Co., LPA and Randil J. Rudloff had previously filed a Memorandum indicating that *Page 8 
KeyBank could prove no set of facts which would entitle KeyBank to a verdict in its favor on the `breach of trust' claim. The Court finds that, as a matter of law, those reasons still pertain with regard to the allegations in the Amended Complaint. Therefore, the `breach of trust' claims against these defendants are dismissed." 12/07/07 J.E.
¶ {30} A trial court can grant a Civ. R. 12(B)(6) motion only if it appears beyond a doubt that the plaintiff can prove no set of facts entitling him to relief. Maitland v. Ford Motor Co., 103 Ohio St.3d 463,2004-Ohio-5717, ¶ 11. See, also, O'Brien v. University Community TenantsUnion, Inc. (1975), 42 Ohio St.2d 242, syllabus. An appellate court reviews a trial court's decision to dismiss a case pursuant to Civ. R. 12(B)(6) de novo. Perrysburg Twp. v. Rossford, 103 Ohio St.3d 79,2004-Ohio-4362, at ¶ 5. In conducting the de novo review, we must presume all factual allegations contained in the complaint to be true and make all reasonable inferences in favor of the nonmoving party.Mitchell v. Lawson Milk Co. (1988), 40 Ohio St.3d 190, 192.
¶ {31} KeyBank argues that its breach of trust claim is based upon the terms of its security agreements. It explains that these agreements provide that all proceeds from any disposition of the collateral shall be held in trust for the benefit of KeyBank. Thus, it maintains that an express trust relationship existed between KeyBank and Pesce. It then goes on to explain that the GS appellees owed a duty to KeyBank because KeyBank was the intended third-party beneficiary of the escrow arrangement between Pesce and the GS appellees. As such, it contends that the trial court erred in dismissing this claim.
¶ {32} The GS appellees counter the above by contending that KeyBank's argument has metamorphosed into a contract argument that was not raised below. KeyBank claims that the GS appellees misunderstand its claim. It claims that it alleged in the complaint that the GS appellees breached a fiduciary duty owed to KeyBank which arose by virtue of the purchase agreement.
¶ {33} "A fiduciary is one who, due to his own undertaking, has a duty to act `primarily for the benefit of another in matters connected with his undertaking.' (Emphasis omitted.) Haluka v. Baker (1941),66 Ohio App. 308, 312; Strock v. Pressnell (1988), 38 Ohio St.3d 207, 216. To support a breach of fiduciary duty claim, *Page 9 
a party must show the existence of a fiduciary relationship, failure to comply with a duty accorded that relationship, and damages proximately resulting from that failure. Strock, 38 Ohio St.3d at 216. A fiduciary relationship may be created either formally, by contract, or informally.Culbertson v. Wigley Title Agency, Inc., 9th Dist. No. 20659, 2002-Ohio-714, at ¶ 29. An informal relationship, however, cannot be unilateral, and occurs only where `both parties understand that a special relationship or trust has been reposed.' Id., citing UmbaughPole Bldg. Co. v. Scott (1979), 58 Ohio St.2d 282, 286." Adorno v.Delgado, 9th Dist. No. 04CA008436, 2004-Ohio-5559, ¶ 8.
¶ {34} The complaint and amended complaint indicate that the security agreements KeyBank had with Pesce state that the collateral must be held in trust for the benefit of KeyBank. It then contends that the GS appellees retained possession of the cash proceeds from the collateral. KeyBank then alleges that the GS appellees breached their duty as trustee when it failed to deliver the cash proceeds to KeyBank.
¶ {35} It is clear from the pleadings that there was no formal contract between KeyBank and the GS appellees that created a fiduciary relationship. However, as the definition above shows, that relationship can be created informally if both parties understand that there is a relationship. For the sake of pleading, the above information was sufficient to survive a Civ. R. 12(B)(6) motion. Whether the relationship was created formally or informally, the cause did not need to be pled with specificity. Civ. R. 8. General pleading rules would apply to this cause of action. Civ. R. 8; Civ. R. 9. Thus, the trial court erred when it dismissed the claim on the basis of Civ. R. 12(B)(6). This assignment of error has merit.
 SECOND ASSIGNMENT OF ERROR ¶ {36} "THE TRIAL COURT ERRED BY GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT ON COUNT II OF KEYBANK'S AMENDED THIRD-PARTY COMPLAINT (BREACH OF TRUST) BECAUSE APPELLEES FAILED TO DEMONSTRATE THE ABSENCE OF A GENUINE ISSUE OF MATERIAL FACT AND THAT APPELLEES ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW."
¶ {37} This assignment of error specifically addresses summary judgment being granted on the breach of trust claim and that the trial court erred in doing so. This is a *Page 10 
factually incorrect assertion. As the statement of the facts and the first assignment of error show, summary judgment was not granted on the breach of trust claim, rather, it was dismissed for failing to state a claim upon which relief could be granted. The trial court, in ruling on the summary judgment motion, once again disposed of the breach of trust claim through Civ. R. 12(B)(6) as it was the exact same claim that was previously asserted and disposed of in that manner. It was not making a summary judgment ruling on that claim since the GS appellees did not move for summary judgment on that claim; their summary judgment motion did not address the breach of trust claim. As no ruling for summary judgment was rendered on this issue, it is inappropriate for this court to make a ruling on whether or not the claim could survive summary judgment. As such, for those reasons, we find no merit with this assignment of error.
 CONCLUSION ¶ {38} For the above stated reasons, the first and third assignments of error have merit, but the second assignment of error does not. The trial court's grant of summary judgment on the conversion claim and dismissal of the breach of trust claim are hereby reversed. The cause is remanded for further proceedings according to law and consistent with this Court's opinion.
Donofrio, J., concurs.
DeGenaro, P.J., concurs. *Page 1